# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | Case No. 08-12924 (CSS) |
| FRANKLIN BANK CORPORATION, ) | |
| ) | **Hearing Date: 4/14/09 at 2:30 p.m.** |
| Debtor. ) | **Objection Deadline: 4/7/09 at 4:00 p.m.** |

## MEMORANDUM IN SUPPORT OF MOTION FOR ORDER AUTHORIZING ADVANCEMENT BY INSURER OF DEFENSE EXPENSES OF INSURED PERSONS PURSUANT TO DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

On March 24, 2009, Anthony Nocella and Russell McCann ("Movants") filed their *Motion for Order Authorizing Advancement by Insurer of Defense Expenses of Insured Persons Pursuant to Directors and Officers Liability Insurance Policy* ("Motion"). This is Movants' Memorandum in support of the Motion.

## PROCEDURAL BACKGROUND

1. On November 12, 2008 (the "Petition Date"), debtor Franklin Bank Corporation ("Franklin Bank" or "Debtor") filed a voluntary petition in this Court for bankruptcy under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 701-784 (as amended, the "Bankruptcy Code").

2. Movants Anthony Nocella and Russell McCann are the former Chief Executive Officer and Chief Financial Officer, respectively, of Franklin Bank. Each has been named as a defendant in the consolidated securities class action styled *In re Franklin Bank Corp. Securities Litigation*, 4:08-cv-01810 (the "*Franklin Bank Corp. Securities Litigation*"), in the United States District Court for the Southern District of Texas, the earliest of which consolidated cases was filed on June 6, 2008.

3. On March 6, 2009, the plaintiffs filed a consolidated amended complaint in the *Franklin Bank Corp. Securities Litigation* (the "Consolidated Complaint") naming Messrs. Nocella and McCann, as well as former Franklin Bank director Lewis S. Ranieri, as defendants.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as a proceeding arising under or related to a case under title 7 of the Bankruptcy Code. Venue in this matter is proper under 28 U.S.C. § 1408.

## BASIS FOR RELIEF

### A. The Debtor's D&O Insurance Policy

5. The Debtor is the named insured under a Management Liability and Company Reimbursement Insurance Policy, designated as policy number ELU102288-07 (the "XL Specialty Policy"), issued by XL Specialty Insurance Company ("XL Specialty").

6. The XL Specialty Policy provides specified coverage to the Debtor and its current and former officers and directors on a "claims-made" basis, with coverage extending from December 31, 2007 to December 31, 2008 (the "Policy Period"). Subject to all of its terms, conditions and exclusions, the XL Specialty Policy contains a $10,000,000 aggregate Limit of Liability for covered "Loss," which includes "Defense Expenses," as those terms are defined in the XL Specialty Policy.

7. The terms of the XL Specialty Policy are typical of those that are commonly obtained by companies such as the Debtor. In relevant part, the XL Specialty Policy contains three insuring clauses, designated herein as "Clause A," Clause B" and "Clause C."

8. Clause A provides specified liability coverage directly to the "Insured Persons" for any "Loss" resulting from a "Claim" first made against them during the Policy Period for a "Wrongful Act" (except for Loss which the Debtor is permitted or required to pay on behalf of

2

the Insured Persons as indemnification). "Insured Persons" for purposes of the XL Specialty Policy includes former officers and directors of the Debtor. "Loss" for purposes of the XL Specialty Policy includes legal liabilities arising from such Claims, specifically including Defense Expenses.

9. Clause B provides specified coverage to the Debtor to reimburse it for indemnification provided to the "Insured Persons" for any "Loss" resulting from a "Claim" first made against them during the Policy Period for a "Wrongful Act," subject to a $500,000 per Claim retention for Claims other than Securities Claims. Securities Claims are subject to a $750,000 per Claim retention.

10. Clause C provides specified liability coverage to the Debtor for "Loss" resulting from any "Securities Claim" first made against it during the Policy Period for a "Company Wrongful Act." Payments made to the Debtor pursuant to Clause C are subject to the $750,000 retention amount and to the same aggregate limit of liability as payments made under Clauses A and B.

11. The XL Specialty Policy includes a so-called "Priority of Payments" provision. It gives priority to payment to the "Insured Persons" for "Loss" (including Defense Expenses) under Clause A:

> In consideration of the premium charged, it is understood and agreed that if Loss, including Defense Expenses, shall be payable under more than one of the INSURING AGREEMENTS, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:
>
> (1) first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under INSURING AGREEMENT (A);

(2) second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company under INSURING AGREEMENT (B); and

(3) third, the Insurer shall make such other payments which the Insurer may be liable to make under INSURING AGREEMENT (C) or otherwise.

XL Specialty Policy, Endorsement No. 15.

### B. Claims Pending Against the Debtor's Former Officers

12. As of the Petition Date, the Debtor and former officers of Franklin Bank ("Former Franklin Bank Officers") were defendants in the *Franklin Bank Corp. Securities Litigation*. On December 1, 2008, the District Court ordered that the action against Franklin Bank be severed and stayed in conformity with applicable bankruptcy law.

13. The Consolidated Complaint in the *Franklin Bank Corp. Securities Litigation* asserts claims against Anthony Nocella and Russell McCann as former officers of Franklin Bank, as well as Lewis S. Ranieri as a former director of Franklin Bank.

14. In their capacity as former officers and directors of Franklin Bank, the Former Franklin Bank Officers and Mr. Ranieri are Insured Persons under the XL Specialty Policy.

15. In the *Franklin Bank Corp. Securities Litigation*, plaintiffs have alleged causes of action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, arising out of alleged misstatements and omissions contained in various press releases and public filings with the Securities and Exchange Commission.

16. The Former Franklin Bank Officers notified XL Specialty of the *Franklin Bank Corp. Securities Litigation* and contend that the XL Specialty Policy covers Defense Expenses incurred in connection with that proceeding. Movants seek relief to authorize XL Specialty to advance to the Former Franklin Bank Officers Defense Expenses (as defined in the XL Specialty Policy) out of the proceeds of the XL Specialty Policy. Debtor has not indemnified the Former

4

Franklin Bank Officers for any Defense Expenses incurred to date in the *Franklin Bank Corp. Securities Litigation*.

## APPLICABLE AUTHORITY

17. Movants respectfully submit that the proceeds of the XL Specialty Policy (the "Proceeds") are not property of the Debtor's bankruptcy estate under Section 541 of the Bankruptcy Code, and therefore the automatic stay does not apply to XL Specialty's advancement of Defense Expenses in the *Franklin Bank Corp. Securities Litigation*. Alternatively, even if the Proceeds were deemed estate property, sufficient cause exists to lift the automatic stay to permit XL Specialty to use the Proceeds to advance Defense Expenses of the Former Franklin Bank Officers and other Insured Persons in connection with the *Franklin Bank Corp. Securities Litigation*.

### A. The Automatic Stay Does Not Apply.

18. Section 362(a) of the Bankruptcy Code prohibits, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 541 of the Bankruptcy Code provides that the "estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Unequivocal precedent from this Court holds that the proceeds of D&O policies, like the Policies in this case, are not estate property. Miller v. McDonald (In re World Health Alternatives, Inc.), 369 B.R. 805 (Bankr. D. Del. 2007); In re Allied Digital Techs. Corp., 306 B.R. 505 (Bankr. D. Del. 2004). Accordingly, Movants submit that the automatic stay does not apply to XL Specialty's advancement of Defense Expenses in connection with the *Franklin Bank Corp. Securities Litigation*.

19. This Court's recent decision in the In re World Health Alternatives case is instructive. In that case, the Court refused to grant an injunction requested by a trustee to prevent the debtor's directors and officers from consummating a settlement that would exhaust the available D&O policy proceeds. In re World Health Alternatives, 369 B.R. at 811. In so holding, the Court ruled that the proceeds of the D&O policy were not property of the debtor's estate. *Id.* Like the XL Specialty Policy in this case, the policy at issue in In re World Health Alternatives provided three types of coverage: "Coverage A" provided coverage directly to the officers and directors of the debtor; "Coverage B" provided coverage to the debtor for amounts it paid to indemnify its directors and officers; and "Coverage C" provided coverage directly to the debtor for certain types of claims. *Id.* at 808. The policy in that case – like the XL Specialty Policy here – also contained a priority of payments provision, which gave priority to payments under Coverage A. *Id.* The In re World Health Alternatives court held that the policy proceeds were not property of the estate because there were no pending claims against the debtor that would be covered by the policy and the settlement was being funded pursuant to the policy's "Coverage A." *Id.* at 811.

20. As in In re World Health Alternatives, the Debtor faces no direct claims for which it could seek coverage under any of the XL Specialty Policy's coverage sections. Therefore, the Debtor's interest (if any) in the Proceeds is merely hypothetical and subordinate to the Former Franklin Bank Officers' bargained-for right to coverage for Defense Expenses incurred in connection with the *Franklin Bank Corp. Securities Litigation.*

21. The XL Specialty Policy's Priority of Payment provision bolsters this conclusion. That provision confirms the parties' intent to give priority to the right to payment of current and former officers and directors. In re World Health Alternatives, 369 B.R. at 811 (finding that the

6

priority of payments provision "requires that payments first be made to Coverage A insureds"); see also In re Enron Corp., No. 01-16034 (AJG), 2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002) (recognizing that by operation of the priority of payments provision the debtors' right to entity and indemnification coverage are expressly subordinated to the directors' and officers' right to direct liability coverage) (a copy of the order is attached as Exhibit "A"); In re Lernout & Hauspie Speech Prods., N.V., Nos. 00-4397 through 00-4399 (JHW), pp. 44, 47 (Bankr. D. Del. May 8, 2001) (transcript of May 8, 2001 hearing) (finding that the priority of payments provision provides that the directors and officers have first priority to payment of policy proceeds under the direct liability coverage) (a copy of the transcript is attached as Exhibit "B"); In re Laminate Kingdom LLC, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) ("[P]ayment of the proceeds in accordance with the "Priority of Payments Endorsement" does not diminish the protection the Policy affords the estate, as such protection is only available after the [c]osts of [d]efense are paid."

22. In sum, in accordance with the well-reasoned holding in In re World Health Alternatives, XL Specialty's advancement of Defense Expenses is not subject to the automatic stay because of the Debtor's lack of any interest in the Proceeds and by operation of the Priority of Payments provision. In re World Health Alternatives, 369 B.R. at 811; see also In re Allied Digital, 306 B.R. at 512 (finding that in cases where a policy provides the debtor with coverage, but the covered loss "either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate"); Ochs v. Lipson (In re First Cent. Fin. Corp.), 238 B.R. 9, 16-17 (Bankr. E.D.N.Y. 1999) (allowing D&O policy proceeds to be used to fund the settlement of an underlying class action lawsuit against the debtor's directors and officers despite the

bankruptcy trustee's objections; D&O policy proceeds not estate property); In re CHS Elecs., Inc., 261 B.R. 538 (Bankr. S.D. Fla. 2001) (same).[1]

**B. Even if the Automatic Stay Applies, Ample Cause Exists To Lift the Stay Here.**

23. Even if the Proceeds are deemed property of the Debtor's estate, the Court should lift the automatic stay to permit XL Specialty to use the Proceeds to advance Defense Expenses of the Former Franklin Bank Officers and other Insured Persons named or who may be named as defendants in the *Franklin Bank Corp. Securities Litigation*.

24. The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citations omitted). The automatic stay, however, "is not meant to be indefinite or absolute, and in appropriate instances, relief may be granted." *Id.* (citation omitted). Accordingly, the Bankruptcy Code provides creditors and other interested parties with a mechanism for obtaining relief from the stay under 11 U.S.C. § 362(d) ("Section 362(d)").

25. Section 362(d) of the Bankruptcy Code provides that at the request of an interested party, the court shall grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define cause, but courts are given broad discretion to provide appropriate relief from the automatic stay based upon the "totality of the

---

[1] Numerous courts outside Delaware also hold that D&O policy proceeds are not estate property under Section 541 of that Bankruptcy Code. See, e.g., La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.), 832 F.2d 1391 (5th Cir. 1987); In re Medex Reg'l Labs., LLC, 314 B.R. 716 (Bankr. E.D. Tenn. 2004) (same); In re Adelphia Commc'ns Corp., 298 B.R. 49 (S.D.N.Y. 2003); Maxwell v. Megliola (In re marchFIRST, Inc.), 288 B.R. 526 (Bankr. N.D. Ill. 2002), aff'd, 293 B.R. 443 (N.D. Ill. 2003).

circumstances in each particular case." Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) (citation omitted); see also Izzarelli, 141 B.R. at 576 ("'Cause' is not defined in the Code; it must be 'determined on a case-by-case basis.'") (citations omitted).

26. This Court has identified three criteria that courts should consider in determining whether to grant relief from the automatic stay:

> 1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>
> 3. The probability of the creditor prevailing on the merits.

Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.), 193 B.R. 713, 718 (Bankr. D. Del. 1996) (citing Izzarelli, 141 B.R. at 576); see also Levitz Furniture Inc. v. T. Rowe Price Recovery Fund, L.P. (In re Levitz Furniture Inc.), 267 B.R. 516, 523 (Bankr. D. Del. 2000); Am. Airlines v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993). This Court has explained that "the required showing" for the third criterion is "very slight," Izzarelli, 141 B.R. at 577, and that the non-bankrupt party need only show that "their claim is not frivolous." Levitz Furniture Inc., 267 B.R. at 523.

27. The request made here easily satisfies the three criteria. First, neither the Debtor nor its estate will suffer any – much less great – prejudice if the Court grants relief from the automatic stay with respect to the XL Specialty Policy. The Debtor's estate faces no direct exposure in connection with the *Franklin Bank Corp. Securities Litigation* because it is no longer a named defendant in the action.

28. Second, in contrast, the Former Franklin Bank Officers would suffer significant hardship if they are deprived of the ability to access the Proceeds to fund Defense Expenses

9

incurred in connection with the *Franklin Bank Corp. Securities Litigation.* See, e.g., In re Cybermedica, Inc., 280 B.R. 12 (Bankr. D. Mass. 2002) (cause existed to lift the automatic stay to permit the advancement of defense costs because the directors would be "irreparably harmed" if they were not permitted to exercise their contractual right to the advancement of defense costs); see also In re Arter & Hadden, L.L.P., 335 B.R. 666 (Bankr. N.D. Ohio 2005) (holding that although proceeds from a "Management Liability Policy" issued to a bankrupt law firm were property of the debtor's estate, cause existed to lift the automatic stay to allow the insurer to pay defense fees because the individual insureds "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense of the trustee's complaint" and any harm to the debtor was merely "speculative").

29. Importantly, as discussed above, the XL Specialty Policy's Priority of Payment confirms the parties' intent to weigh the Former Franklin Bank Officers' interests in the Proceeds over the interests (if any) of the Debtor. See In re World Health Alternatives, 369 B.R. at 811; In re Enron Corp., 2002 WL 1008240; In re Lernout & Hauspie Speech Prods., N.V., Nos. 00-4397 through 00-4399 (JHW), pp. 44, 47 (transcript of May 8, 2001 hearing).

30. Third, to the extent the third criterion even applies to the present circumstances, the operative creditors are the Former Franklin Bank Officers on whose behalf XL Specialty would use the Proceeds. The Former Franklin Bank Officers have sought coverage under the Policies for the *Franklin Bank Corp. Securities Litigation.* Accordingly, the Former Franklin Bank Officers' claim to the Proceeds is not frivolous.

31. As set forth herein, ample cause exists to justify the Court's grant of relief from the automatic stay (in the event it were deemed to apply) to permit XL Specialty to use the

Proceeds to advance Defense Expenses incurred by Insured Persons in connection with the *Franklin Bank Corp. Securities Litigation*.

WHEREFORE, Movants respectfully request that the Court enter an order (i) authorizing XL Specialty's advancement of Defense Expenses, as described herein, and (ii) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated: March 26, 2009 | CONNOLLY BOVE LODGE & HUTZ LLP |
| | /s/ Jeffrey C. Wisler |
| | Jeffrey C. Wisler (No. 2795) |
| | Marc J. Phillips (No. 4445) |
| | The Nemours Building |
| | 1007 North Orange Street |
| | P.O. Box 2207 |
| | Wilmington, DE 19899 |
| | 302-658-9141 |
| | |
| | *Attorneys for Anthony Nocella and Russell Mccann* |

#673227